# 13-1739-cv

## United States Court of Appeals for the Second Circuit

DONNA VEEDER, STACY VEEDER, BRENDAN VEEDER,

*Plaintiffs-Appellees*,

v.

STEVEN NUTTING, INDIVIDUALLY, DAVID BURNS, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES AS INVESTIGATORS FOR THE NEW YORK STATE POLICE, STEPHEN HOGAN, INDIVIDUALLY, GEORGE PORT, INDIVIDUALLY,

*Defendants-Appellants*,

ROBERT J. MARTIN, INDIVIDUALLY, KELLY STRACK, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY AS INVESTIGATORS FOR THE NEW YORK STATE POLICE, DREW McDONALD, AND IN THEIR OFFICIAL CAPACITY AS INVESTIGATORS FOR THE NEW YORK STATE POLICE, BRENT GILLIAM, INDIVIDUALLY AND IN THEIR CAPACITY AS LIEUTENANTS FOR THE NEW YORK STATE POLICE, BRIAN VALOZE, INDIVIDUALLY AND IN THEIR CAPACITY AS EMPLOYEES OF THE NEW YORK STATE POLICE, TIMOTHY HARD, INDIVIDUALLY AND IN THEIR CAPACITY AS EMPLOYEES OF THE NEW YORK STATE POLICE, MICHAEL McDERMOTT, INDIVIDUALLY AND IN THEIR CAPACITY AS AN ASSISTANT DISTRICT ATTORNEY FOR THE COUNTY OF ALBANY, NEW YORK, JOHN DOE, 1-7, THE NAME BEING FICTITIOUS BUT INTENDED TO REPRESENT AN EMPLOYEE OF THE NEW YORK STATE POLICE, INDIVIDUALLY AND IN HIS/HER CAPACITY AS AN EMPLOYEE OF THE NEW YORK STATE POLICE,

*Defendants*.

―――――――――――――――――

**On Appeal from the United States District Court
for the Northern District of New York**

―――――――――――――――――

**BRIEF FOR PLAINTIFFS-APPELLEES**

Dated: August 5, 2014

**KEITH F. SCHOCKMEL**
**Attorney for Plaintiffs-Appellees**
**4 Atrium Drive, Suite 290**
**Albany, New York 12205**
**(518) 435-9360**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………ii

PRELIMINARY STATEMENT……………………………………………………...…1

ISSUES PRESENTED …………………………………………………………….…3

STATEMENT OF THE CASE

      A.    FACTS……………………………...………………………….……..4

      B.    PROCEEDINGS BELOW……………...…………………….……8

SUMMARY OF ARGUMENT…………………...……………………...……12

ARGUMENT

      POINT I
      THE SEIZURE OF THE FOLDER
      AND ENVELOPES VIOLATED CLEARLY
      ESTABLISHED LAW………………………………………………......13

      POINT II
      THE SEARCH OF THE ENVELOPES
      VIOLATED CLEARLY ESTABLISHED LAW…………………….……22

      POINT III
      THIS COURT SHOULD EXERCISE
      ITS PENDENT JURISDICTION
      OVER RELATED QUESTIONS

          A.  The seizure of the folder …………………………………….29
          B.  The opening of the letters ……………………………….34
          C.  The seizure of the briefcase ……………………………......37

CONCLUSION………………………………………………………………...39

# TABLE OF AUTHORITIES

## CASES                                                                                   PAGE

*Arizona v. Hicks*, 480 U.S. 321 (1987) ……………………..……….26, 27, 28, 33, 35

*Brinegar v. United States*, 338 U.S. 160 (1949) ………………………………….....26

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) …………………………..18, 33

*Earle v. Annibali*, 2003 Lexis 27337 (D. Colo. 2003) ……………………...….17

*Earle v. Griffin,* 2004 Lexis 30204 (D. Colo. 2004) ……………………………..16

*Earle v. Vail*, 146 Fed. Appx. 990 (10th Cir. 2005) ….…………...….15, 16, 17, 31

*Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991) ………………...……32

*Gonzalez v. City of Schenectady*, 728 F.3d 149 (2d Cir. 2013) …………………..22

*Horton v. California*, 496 U.S. 128 (1990) …………………………..…………15, 33

*Illinois v. Andreas,* 463 U.S. 765 (1983) …………………………………….…18, 33

*Johnson v. Newburgh Enlarged School District*, 239 F.3d 246 (2d Cir. 2001) ….23

*Katz v. United States*, 389 U.S. 347 (1967) ………………………………………25

*Mincey v. Arizona*, 487 U.S. 385 (1978) ……………………………………..19, 33

*Minnesota v. Dickerson*, 508 U.S. 366 (1993) ………...…………….....13, 14, 15, 33

*O'Connor v. Ortega*, 480 U.S. 709 (1987) ……………………………………...…..20

*Ornales v. United States* 517 US 690 (1996) …………………...…………………..26

*Payton v. New York*, 445 U.S. 573 (1980) ……………………...…………..…….20

*Sanders v. Levy,* 558 F.2d 636 (2d Cir.1976) ……………………………………33

ii

## CASES (cont'd)                                    PAGE

*San Filippo v. U.S. Trust Co. of N.Y., Inc.*, 737 F.2d 246 (2d Cir. 1984) ………...33

*Soldal v. Cook County*, 506 U.S. 56 (1992) .……………..……………..…15, 20, 33

*Stansbury v. Wertman* 721 F.3d 84 (2d Cir. 2013) ………………………………32

*Thompson v. Louisiana*, 469 U.S. 17 (1984) …………………………………....21, 23

*Washington v. Chrisman*, 455 U.S. 1 (1982) …………………………….....15, 33

*Winfield v. Trottier*, 710 F.3d 49 (2d Cir. 2013) ……………………………....28

*United States v. Crouch*, 648 F.2d 932 (4th Cir. 1981) …………………………..25

*United States v. Duckett*, 583 F.2d 1039 (5th Cir. 1978) …………………….....19

*United States v. Jacobsen*, 466 U.S. 109 (1984) …………..……....…23, 24, 25, 35

*United States v. Ochs*, 595 F.2d 1247 (2d Cir. 1979) ………………….....24, 25

## UNITED STATES CONSTITUTION

Fourth Amendment ……………………………………………………...throughout

## FEDERAL STATUTES

42 U.S.C. § 1983 ……………………………………………..…………..………..2, 22

# PRELIMINARY STATEMENT

Garry Veeder, a civilian employee of the New York State Police, husband to plaintiff-appellee Donna Veeder, and father to plaintiffs-appellees Stacy Veeder and Brendan Veeder, hanged himself in his home's detached garage in the early morning of May 23, 2008.  Albany County Sheriff's Deputies responded to the 911 call, but were shortly thereafter replaced by the New York State Police. When Donna Veeder became aware that the State Police had assumed control, she immediately told them that she did not want them in her home; she considered them responsible for her husband's death.  They ignored her objection and began a room by room search.

Donna had found a folder with sealed envelopes inside addressed to the various members of the Veeder family and the Veeders' attorney.  Defendants-appellants Steven Nutting and David Burns became aware of the folder, and surmising that it contained Garry Veeder's suicide notes, ordered Donna to give it to them.  Donna refused, and called her attorney for assistance.  Her attorney advised her that she was not required to relinquish the folder and informed both Nutting and Burns that they could not have it.

Nutting discussed Donna's objection with defendant-appellant George Port, the supervisor on scene.  Additionally, Nutting telephoned defendant-appellant Stephen Hogan, counsel for the New York State Police, for advice.  Both Port and

Hogan directed that the folder be seized over Donna's objection. Nutting took the folder.

While this was occurring, defendant Martin directed the Veeder daughter, Stacy, to accompany him to his automobile to provide a statement. When Stacy attempted to leave the automobile at one point, he blocked her exit with his arm, indicating that she could not leave until the statement had been signed.

After Stacy signed the document which Martin prepared, Nutting and Burns informed Donna Veeder that she and her family had to leave the home, as they intended to conduct a search. Donna objected, arguing that a search warrant was required. Nutting and Burns told her a search warrant was not necessary, and that they could keep her out of the home for days if they wished. Donna took her children and went to the home of a family friend. During the course of the search a briefcase belonging to Donna Veeder was seized by members of the New York State Police.

 Several days later a phone conference was conducted with defendants-appellants Hogan and Port, wherein it was decided that the sealed envelopes contained in the folder seized by Nutting would be opened and the contents read and photocopied before being returned to Garry's family. This was done.

As a consequence, this action was filed pursuant to 42 U.S.C. § 1983 alleging, *inter alia*, that as there was no warrant, consent, nor exigent

circumstances, and the item did not appear to have any connection to criminal activity, the taking of the folder constituted an illegal seizure, and the subsequent opening and photocopying of the contents of the envelopes inside an illegal search.[1]

# ISSUES PRESENTED

1.      Was the law clearly established on May 23, 2008 that a police officer may not seize, absent a warrant, consent, or exigent circumstances, property that does not appear to be contraband or otherwise incriminating?

2.      Was the law clearly established on May 27, 2008 that a police officer may not search a sealed package that does not appear to be contraband or evidence of crime, absent a warrant, consent, or exigent circumstances?

3.      Where a police officer has appealed the denial of a grant of qualified immunity, and the facts upon which the appeal is based demonstrate that the officer violated a clearly established constitutional right, should this Court exercise its pendent jurisdiction to grant summary judgment on the issue of liability against the officer?

---

[1] Claims alleging an illegal seizure of Stacy Veeder, an illegal seizure of the briefcase, and an illegal search of the home were also asserted.  As this appeal is from the denial of defendants' motion for summary judgment on the basis of qualified immunity with regard to their seizure of the folder and the search of the envelopes, however, these claims are not presently before this Court on appeal.

# STATEMENT OF THE CASE

## A.    FACTS

On the morning of May 23, 2008, Donna Veeder found the body of her husband, Garry, hanging from a rope with a bag over his head in their home's detached garage (JA237).[2]  She screamed for her daughter, Stacy, who, observing her father's body, returned to the house to get a phone and a pair of scissors. After cutting down her father's body, Stacy called 911 (JA237).

Members of the Albany County Sheriff's Department responded and assumed control of the scene (JA96).  Sometime thereafter, defendants-appellants Steven Nutting, David Burns, and George Port, as well as other members of the New York State Police, arrived and began a room by room search of the Veeder home (JA96, 240-41).  When Donna Veeder became aware that the Albany County Sheriff's Department had been replaced by the New York State Police she advised Nutting, the first member of the State Police she saw, that they were not welcome in her home, as she considered them responsible for her husband's death (JA240).  Neither Burns nor Nutting acceded to her wish that they leave.

Before the New York State Police had entered her home, Donna had found a folder left by Garry which contained sealed envelopes addressed to the various

[2] Unless otherwise indicated, references in parentheses refer to pages of the Joint Appendix (JA__) or Special Appendix (SA__).

4

members of the Veeder family, as well as one to their attorney (JA96). Defendant-appellant Nutting saw the folder and informed Donna that it was "evidence," which he intended to take (JA96, 170-71, 239).  Donna replied that it was her property and that she did not want him to take it.  Nutting insisted, and their discussion continued for some time.  Eventually, Donna Veeder telephoned her attorney, Stephen Kouray, to enlist his assistance.  Attorney Kouray told Donna that she did not have to turn over the folder.  He also spoke to Nutting and advised him that Donna objected to the seizure (JA211, 388).  Nutting replied that the New York State Police would, nevertheless, take the folder (JA210).

Eventually, Mrs. Veeder received a second call from attorney Kouray's office (attorney Brian Mercy) to reiterate to Donna that she was not required to relinquish the folder.  As Donna was too distraught to speak by that point, a family friend who had come to offer support, Julianne Della Rocco, gave the phone to defendant-appellant Burns.  According to Burns, he had been advised by a member of the Albany County Sheriff's Department that the folder contained "what were likely suicide notes for members of [Garry Veeder's] family" (JA164).  Mr. Mercy informed Burns that Donna Veeder objected to the seizure of the folder and letters; Burns replied that they intended to take them regardless (JA98, 165).

Nutting went back outside to discuss with defendant-appellant Port, the senior officer on the scene (JA721), Donna's objection to the State Police taking the folder (JA190-191). Port and Nutting, like Burns, assumed that the folder held Garry Veeder's suicide notes (JA190).

Nutting next called State Police Counsel's office and spoke with defendant-appellant Hogan (JA171, 391-392, 796, 814, 817). With Port's and Hogan's support, the decision was made to seize the folder over Donna's objection (JA171).

While this was happening defendant Martin took Donna's daughter, Stacy, to his unmarked vehicle and directed her to provide a statement (JA805-807). When Stacy opened the door in an attempt to leave the vehicle, Martin blocked her exit with his arm and said that she had to finish the statement (JA103, 251-255). Martin prepared the statement, which Stacy signed.

Although Donna Veeder had indicated to both Nutting and Burns that she did not want the New York State Police in her home (JA240, 501-502), they informed her that they intended to conduct a search of the residence (JA97). Donna repeatedly, and vehemently, objected to the search, asserting that a warrant was required (JA98). Burns and Nutting informed her that the home was a "crime scene," which they could "tape off" and prevent the family from reentering for days if they wished (JA97-99, 104-106). Accepting that any further opposition

would be futile, Donna Veeder and her family left and went to the home of the family friend, Julianne Della Rocco (JA99). Later that day, defendant Martin came to Julianne Della Rocco's home where he prepared a multiple page statement for Donna's signature (JA147). Feeling ill, and unable to read the documents Martin prepared, Donna Veeder nevertheless signed them (JA98-99).[3]

While Donna and her children were away, defendants Strack and McDonald conducted an exhaustive search of the Veeder home, which included the taking of a great number of photographs (JA641-42). In addition to taking from the detached garage the instruments of Garry Veeder's suicide, they took from Donna's home a briefcase belonging to her (JA654-55).

That afternoon, following an autopsy on Garry Veeder, the Albany County Coroner ruled his death a suicide (JA184, 558, 567).

On May 27, 2008, Port, Hogan, Strack, and McDonald participated in a telephone conference with regard to the folder and sealed envelopes which had been taken from Donna Veeder (JA667-669). At Hogan's suggestion, Port opened the envelopes and read the notes to Garry Veeder's family and attorney. Hogan directed Port to photocopy the notes, which he had McDonald and Strack do (JA161, 175, 734-36, 741). That afternoon the—now opened—envelopes were

---

[3] Appellants contend that Donna Veeder executed a written consent to search her home, and have produced during discovery a document purporting to be said consent. Donna Veeder has consistently denied knowingly signing the document; however, acknowledging that the signature does appear to be hers, posits that it may have been slipped in with the documents prepared by Martin that she signed after she had left her home.

7

delivered to the family (JA100).  Several months later Donna's briefcase was returned to her (JA100).

## B.    PROCEEDINGS BELOW

At the close of discovery plaintiffs moved for partial summary judgment on the issue of liability against defendants Nutting, Burns, Port, and Hogan (JA27-28), and defendants subsequently moved for summary judgment on certain claims, and on the basis of qualified immunity on behalf of all defendants (JA134-135). The District Court (D'Agostino, J.) addressed defendants' motion first, and denied qualified immunity to defendants Nutting, Burns, Hogan, and Port (SA1-35).

Finding "the undisputed evidence makes clear that [defendants Strack and McDonald] did not begin their search until after plaintiff Donna Veeder had signed the written consent" and that "it was objectively reasonable for them to believe that plaintiff Donna Veeder's briefcase, which contained documents related to Garry Veeder's work with the New York State Police, would be relevant" the Court ruled that defendants Strack and McDonald were entitled to qualified immunity (SA30-33).

Similarly, although denying defendants' motion for summary judgment with respect to the seizure of Stacy Veeder (SA25-27), the Court found that "a reasonable officer in defendant Martin's position would not understand that his

8

actions [blocking her exit from the car with his arm] violated Stacy Veeder's rights," and granted Martin qualified immunity (SA33-36).

The District Court devoted a single sentence to plaintiffs' motion for summary judgment: "Since the same factual disputes discussed in the Court's disposition of Defendants' motion for summary judgment raise triable issues with respect to Plaintiffs' motion, the Court denies Plaintiffs' motion for summary judgment" (SA36).

Thereafter both parties moved for reconsideration (SA971-72, 997-98). The Court denied all branches of defendants' motion for reconsideration because, among other reasons, "the validity and scope of plaintiff Donna Veeder's consent (and any subsequent withdrawal of the consent) must be determined" (SA61).

Responding to plaintiffs' motion for reconsideration with regard to the seizure of the folder, the District Court noted that defendants admitted:

> 3. Garry Veeder left a folder containing letters addressed to each plaintiff, as well as to plaintiff's attorney, Stephen Kouray.
> 4. On or about May 23, 2008 defendant Steven Nutting advised plaintiff Donna Veeder that he intended to take the folder with letters left by Garry Veeder.
> 5. Donna Veeder advised defendant Nutting that she objected to his taking the folder.

(SA65). The Court, nonetheless, denied plaintiffs' motion on the ground that there were "factual disputes that must be decided by the jury" (SA65). The Court did not identify what these "factual disputes" were (SA65).

9

The District Court further justified its ruling on the basis that police officers, "[m]ay seize *any* evidence that is in plain view during the course of their legitimate emergency activities" (SA66, internal quotations and citations omitted, emphasis added).  The Court stated:  "the officers reasonably believed that [the sealed envelopes] were suicide notes…[and as] they were relevant to their investigation of Mr. Veeder's death …the fact that plaintiff Donna Veeder did not consent is not dispositive" (SA67).  The Court concluded, "the Court finds that it properly denied Plaintiffs' motion for summary judgment in light of the issues of fact discussed in its March 29, 2013 Memorandum-Decision and Order" [i.e., the single sentence quoted above] (SA67-68).

With regard to plaintiff's motion for reconsideration with regard to the opening of the letters, the Court stated, "a jury could find that Defendants were justified in seizing the folder containing the letters, as it was readily apparent that they were relevant to the ongoing investigation into Mr. Veeder's death.  As such, Plaintiff Donna Veeder's lack of consent to their seizure is not dispositive of this issue" (SA68).

Concerning the seizure of Donna Veeder's briefcase, the District Court found "nothing in the record suggested defendants Strack and McDonald were aware that Plaintiff Donna Veeder objected to its seizure" (SA69).  Determining "that an objectively reasonable officer…would believe that they could seize [any]

evidence they believed to be relevant…the fact that neither the briefcase nor its contents 'suggested criminal activity' does not mean that defendants did not reasonably believe that the items were relevant to their investigation" (SA69).

As to the seizure of Stacy Veeder in the police car, the Court acknowledged that Stacy testified that when she opened the passenger door defendant Martin "reached across me…to grab the bar or handle that you would open the door with… to indicate to me, you know, that I'm not leaving the car… that was not an option for me to be leaving the car" (SA71). Nevertheless, because Stacy Veeder "never requested that she be permitted to leave…and that she was allowed to keep her hand on the door handle, an indication that she could have exited the vehicle at any time," the Court found no reasonable police officer would have understood his actions to have violated Stacy Veeder's rights (SA72).

# SUMMARY OF ARGUMENT

It has long been clearly established that the warrantless search and seizure of property is illegal, subject to a few very specific and well defined exceptions. The plain view doctrine, relied upon defendants-appellants as justification for both their seizure of the folder containing the envelopes, as well as the search of the envelopes themselves, has quite clearly been limited by a series of Supreme Court cases to property whose incriminating character is immediately apparent. Thus, the District Court was correct in denying qualified immunity to defendants-appellants. The reasoning of the District Court was erroneous, however, in that the Court held the plain view doctrine applicable, but ruled that a question of fact as to whether defendants-appellants were in a position to lawfully view the folder precluded the grant of qualified immunity for both its seizure and subsequent search.

Moreover, the law was so clearly established that, based upon the undisputed facts, the interests of justice and judicial economy warrant this Court exercising its pendent jurisdiction to direct summary judgment in favor of plaintiffs-appellees on the issue of liability.

# ARGUMENT

## POINT I

### THE SEIZURE OF THE FOLDER
### AND ENVELOPES VIOLATED
### CLEARLY ESTABLISHED LAW

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

While this constitutional guarantee is not absolute, the right it confers has

been jealously guarded by the Supreme Court.

> Time and again, this Court has observed that searches and seizures "'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment subject only to a few specifically established and well delineated exceptions.'"

*Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993).   There is no dispute that a

warrant for the seizure of the folder was not issued in this case.  Thus, to pass

constitutional muster, its seizure must fall within one of the "few specifically

established and well delineated exceptions."

Defendants acknowledge the Donna Veeder very clearly conveyed to them that she objected to their taking her folder.  Her opposition was so strong, in fact, that she called her attorney and had him register her objection with both defendants Burns and Nutting (JA96-97).  Notwithstanding the opinion of the District Court, it is clear beyond any doubt whatsoever that consent was not obtained.  Nor have defendants offered any exigencies justifying its seizure absent consent or a warrant.  Rather, defendants assert they were justified in seizing the folder under the plain view doctrine.  Their reliance is misplaced.

Defendants misstate the elements of the plain view doctrine in their brief, asserting "police may seize property without a warrant if:  (1) they are lawfully in a position to view the property; (2) the police have lawful access of right to the property; and (3) the property's character is immediately apparent. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)" (brief for defendants-appellants, pages 26-27).  Although the first two cited conditions are an accurate portrayal of that case's holding, the third was grossly mischaracterized.

> Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.  **If, however, the police lacked probable cause to believe that an object in plain view is contraband without conducting some further search of the object—i.e., if "its incriminating character [is not] 'immediately apparent,'"—the plain-view doctrine cannot justify its seizure**.

14

*Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) (emphasis added, internal citations omitted).  *See also, Soldal v. Cook County*, 506 U.S. 56, 68 (1992) ("seizures of effects that are not authorized by a warrant are reasonable only because there is probable cause to associate the property with criminal activity"); *Horton v. California*, 496 U.S. 128, 136-37 (1990) ("two additional conditions [ ] must be satisfied to justify [a] warrantless seizure.  First, not only must the item be in plain view, its incriminating character must be 'immediately apparent'"); *Washington v. Chrisman*, 455 U.S. 1, 6 (1982) ("the 'plain view' exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what is clearly incriminating evidence or contraband when it is discovered in a place where the officer has a right to be").

Setting aside for the purposes of this argument whether defendant Burns or Nutting were ever in a position to legitimately view the folder,[4] the plain view doctrine is inapplicable because the character of the folder was not even remotely "incriminating."   Both Nutting and Burns conceded they saw no evidence of criminal activity (JA408, 559).

Suggesting that the situation therein contained "remarkably similar circumstances" to this matter, defendants cite *Earle v. Vail*, 146 Fed. Appx. 990

---

[4] Recall that Donna Veeder advised the first State Police Officer she saw—Nutting—that she did not want them in her house (JA96, 240).

(10th Cir. 2005, unpublished) for the proposition that police may seize any material in plain view that is "directly relevant to the police officers' investigation" (brief of defendants-appellants, pages 27-28). This argument fails for two reasons.

First, *Earle* did not address the question of whether the seizure of suicide notes was legal. The issue before the Tenth Circuit was whether officers who were conducting an investigation of a suicide *with the consent of the homeowner* were entitled to qualified immunity when they took suicide notes they discovered during the search:

> The question in this case is whether police officers investigating the scene of an apparent suicide exceeded the scope of a homeowner's consent to investigate, thereby violating the Fourth Amendment.

146 Fed. Appx. at 990. Adopting District Court's reasoning, the Tenth Circuit ruled that, given that the homeowner consented to a search in conjunction with the investigation of a suicide, a reasonable police officer would not have understood the seizure of suicide notes found in plain view to be violative of the homeowners' Fourth Amendment rights. *Earle v. Griffin,* 2004 Lexis 30204 (D. Colo. 2004), pages 3-4. Thus, qualified immunity was appropriate. Defendants in this case acknowledge their awareness of Donna Veeder's objection to the seizure of the folder; the rationale behind *Earle* is inapplicable.

Second, even were *Earle* read to stand for the proposition that non-incriminating material which is "directly relevant" may be seized, defendants would still obtain no benefit.  The District Court in *Earle*, in granting summary judgment, found that the suicide notes at issue "were, on their face, directly relevant." *Earle v. Annibali*, 2003 Lexis 27337 (D. Colo. 2003), page 4. Defendants in this matter did not observe documents which were "on their face, directly relevant."   They observed a folder containing sealed envelopes, which they surmised contained suicide notes (JA190-91, 377, 389-90, 716).

*Earle*, of course, does not—and cannot—expand the Supreme Court's line of cases standing for the proposition that the warrantless seizure of an item in plain view is permissible only when the "incriminating character" of the item is immediately apparent.  *Earle* does nothing more than insulate from liability police officers who mistakenly believed that permission to search a home in a suicide investigation allowed them to take suicide notes found in plain view within that home.

Developing further their novel premise that the plain view doctrine permits seizure of any "relevant" property, regardless of the lack of indicia of criminality, defendants further contend that the doctrine permits them to take any material they might "reasonably infer" to be relevant, even in a non-criminal investigation (brief

of defendants–appellants, page 40).  In support of this of this argument they refer to a number of cases, all of which pertain to criminal investigations.

They assert, for example, that the Supreme Court "has recognized that the plain view doctrine permits a warrantless seizure 'where it is immediately apparent to the police that they have evidence before them' *Coolidge*, 403 U.S. at 466" (brief of defendants–appellants, page 41).  This is a blatant misstatement of *Coolidge*.  The sentence directly preceding the quoted phrase makes clear that the doctrine justifies a seizure when an officer comes "across a piece of evidence *incriminating the accused.*"  *Coolidge  v. New Hampshire*, 403 U.S. 443, 446 (1971) (emphasis added).

On the same page of their brief defendants quote *Illinois v. Andreas* for the proposition:  "the plain view doctrine 'authorizes seizure of illegal *or evidentiary items* visible to a police officer . . .'" (emphasis in original).  If the remainder of the sentence indicated by the ellipsis is read, it will be noted that the Supreme Court explains that seizure of "evidentiary item visible to a police officer" is permissible only when that officer "has probable cause to suspect that the item is connected to criminal activity."  *Illinois v. Andreas,* 463 U.S. 765, 771 (1983).

Similarly, defendants contend that the Fifth Circuit has "endorsed the plain view seizure of envelopes "when police officers merely suspected that 'something was amiss'" (brief of defendants–appellants, page 42).  This, too, is inaccurate.

18

The Court in the case cited did not uphold the seizure of stolen mail from the defendant because a police officer "merely suspected that 'something was amiss,'" the Fifth Circuit noted that the District Court below "specifically found… that their incriminating nature was immediately apparent to the discovering officer." *United States v. Duckett*, 583 F.2d 1039, 1313-14 (5th Cir. 1978).

Expanding their "something amiss" argument, defendants suggest this *potentially criminal* investigation (i.e., Garry Veeder may have been murdered) authorized the seizure of the folder because defendant Nutting could "reasonably infer" (brief of defendants–appellants, page 40) that it may contain relevant evidence.[5]  This argument is unavailing.  The Supreme Court had made abundantly clear three decades earlier that there is no murder scene exception to the warrant requirement.  *Mincey v. Arizona*, 487 U.S. 385 (1978).

Defendants seem to argue also that the fact that the scene *did not appear to be a crime scene* ("the notes were ultimately a significant factor in confirming that Garry Veeder's unattended death was in fact a suicide" [pages 43-44]) justified the seizure of the folder, apparently on the theory that the Fourth Amendment is not applicable to non-criminal investigations.  This argument, too, had been addressed by the Supreme Court:

---

[5]  Notwithstanding that the presumed contents—suicide notes— would tend to show that no crime had been committed.

19

> As we observed in *T.L.O.*, "[b]ecause the individual's
> interest in privacy and personal security 'suffers whether
> the government's motivation is to investigate violations
> of criminal laws or breaches of other statutory or
> regulatory standards,'… it would be 'anomalous to say
> that the individual and his private property are fully
> protected by the Fourth Amendment only when the
> individual is suspected of criminal behavior.'"

*O'Connor v. Ortega*, 480 U.S. 709, 714-15 (1987).  *See also*, *Soldal* 506 U.S. at

69 ("the reason why an officer might…effectuate a seizure is wholly irrelevant.…

What matters is the intrusion on the people's security from governmental

interference").

> It is a basic principle of Fourth Amendment law that
> searches and seizures inside a home without a warrant
> are presumptively unreasonable.

*Payton v. New York*, 445 U.S. 573, 586 (1980) (quotation marks omitted).

> The simple language of the Amendment applies equally
> to seizures of persons and to seizures of property.

*Id* at 585.

Although not necessary to the determination of this appeal, the question of

whether Burns or Nutting were lawfully in a position to view the folder merits

briefly addressing.  Defendants argue that, notwithstanding Donna Veeder's direct

expression that the New York State Police were not welcome in her home, they

had "implied consent" to enter.

20

In support they note that Stacy Veeder called 911 upon seeing her father's body in the garage, and conclude "plaintiffs' expectation of privacy in their home became diminished after that point" (brief of defendants-appellants, page 30). The United States Supreme Court thirty years ago came to a different conclusion:

> Petitioner's call for help can hardly be seen as an invitation to the general public that would have converted her home into the sort of public place for which no warrant to search would be necessary.

*Thompson v. Louisiana*, 469 U.S. 17, 22 (1984).  As soon as Donna Veeder became aware that the New York State Police were present she told them, "I don't want you in my home" (JA240).

Burns and Nutting readily admit that they did not have consent to take the folder—Donna Veeder did everything in her power to prevent it.  They also agree that there was nothing about the folder that was in any way suggestive of criminal activity.  A warrant was never issued for the seizure of the folder.  They claim that neither a warrant nor consent was necessary because it was likely that the folder contained suicide notes which may have been relevant to their investigation.  That simply is not a valid justification to violate the Fourth Amendment's guarantee of freedom from unreasonable searches.  On May 23, 2008 it was clearly established that, regardless of whether defendants Burns and Nutting were in a position to lawfully view the folder, its seizure was illegal.

21

## POINT II

## THE SEARCH OF THE ENVELOPES
## VIOLATED CLEARLY ESTABLISHED LAW

A state actor who violates the constitutional rights of an individual may be held liable for that violation pursuant to 42 U.S.C. § 1983.  However, if the right in issue was not clearly established, or a reasonable individual would not have understood his or her actions to be unlawful, qualified immunity may be warranted.  *Gonzalez v. City of Schenectady*, 728 F.3d 149 (2d Cir. 2013).  Neither facet of this defense is present in the instant case.

Defendants argue that, even were it the case that the opening of the sealed envelopes contained within the folder seized by Nutting and Burns was an illegal search under the Fourth Amendment, they are entitled to qualified immunity, as the law against such searches was not clearly established.  They invite this Court to frame the issue in terms of whether police may open a lawfully seized envelope "containing a suspected suicide note" (brief of defendants-appellants, pages 47-48).  Noting that there has never been a Supreme Court decision, nor one from this Court, specifically prohibiting that precise behavior, they conclude:  "If no prior cases have previously enunciated the specific right, then that right is not clearly established" (page 47).

22

Defendants confound specific rights with specific acts.

> the absence of legal precedent addressing an identical factual scenario does not necessarily yield a conclusion that the law is not clearly established.  Indeed, it stands to reason that in many instances "the absence of a reported case with similar facts demonstrates nothing more than widespread compliance with" the well-recognized applications of the right at issue on the part of government actors

*Johnson v. Newburgh Enlarged School District*, 239 F.3d 246, 251 (2d Cir. 2001) (citations omitted).

It may very well be that it is the rare case wherein a police officer seizes an envelope presumed to contain a suicide note (see, however, *Thompson v. Louisiana,* 469 U.S. 17 [1985]).  That is not the issue.  The issue is whether it had been clearly established that police could not conduct a warrantless search of the envelopes.

For the reasons set forth in Point I, above, the seizure of the folder and envelopes was a violation of the Fourth Amendment.  The opening up of the sealed envelopes and photocopying of their contents constituted a separate and additional violation.  As the Supreme Court stated in *United States v. Jacobsen*, 466 U.S. 109 (1984):

> [The] Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." This text protects two types of expectations, one involving "searches," the other

23

> "seizures." A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.

466 U.S. at 113.

Lest there be any question as to whether opening letters would constitute an infringement of privacy, the Court noted:

> Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable.   Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package.

466 U.S. at 114.

Defendants cite *United States v. Ochs*, a case that predated *Jacobsen* by five years, for the proposition that police are permitted to "'glance through' bank books and notebooks 'to ascertain whether they constituted evidence' relating to their investigation" (brief of defendants-appellants, page 48).  Again, defendants mischaracterize the case.  The sentence immediately preceding the one referred to begins, "By this time, the police had probable cause to believe that Ochs was engaged [ ] in trafficking in stolen travelers' checks," and the sentence which defendants excerpted makes clear that the examination was to ascertain whether they were instrumentalities of "the stolen travelers' check ring."  *United States v.*

24

*Ochs*, 595 F.2d 1247, 1258 (2d Cir. 1979).   Similarly, footnote 8 of *Ochs*, cited

by defendants, observes that before any "perusal" was permissible "its

incriminatory nature must be immediately apparent." 595 F.2d at 1257, n.8.

   In their final misinterpretation of *Ochs*, defendants state the case stands for

the notion that once police have lawfully seized evidence, "it would outrage

common sense…[to compel the police] to interrupt their work and apply for a

warrant" (brief of defendants-appellants, page 48).  Once again, the immediately

preceding sentence explains the context of the quote:  "Here, it seems clear that

the police had probable cause to seize the records as potentially constituting

evidence or instrumentalities relating to any one of three 'particular' crimes." *Id*.

at 1259.

   Nor is *United States v. Crouch*, also relied upon by defendants, availing.

While the envelopes in that criminal case were discovered in plain view, the Court

noted that the police officers were conducting a search pursuant to a warrant, and

"the agents acted within the scope of the search warrant in removing the letters

from those envelopes to search for the chemicals and paraphernalia named in the

warrant."  *United States v. Crouch*, 648 F.2d 932, 933 (4th Cir. 1981).

   *Ochs* and *Crouch* are simply inapplicable.  *Jacobsen*, *supra*, made clear

three decades ago that a warrant is required to open sealed packages.  *See also,*

*Katz v. United States*, 389 U.S. 347, 357 (1967) ("Searches conducted without

25

warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause'").

Defendants attempt to distinguish *Arizona v. Hicks* on the theory that *Hicks* condemned the warrantless search of an item found in plain view where probable cause to seize the item was lacking, whereas in the instant case Nutting and Burns assert they had probable cause to seize the folder from Donna Veeder (brief of defendants-appellants, pages 51-52).

This concept that defendants had "probable cause" for their actions is a recurring theme throughout their brief. It is inapplicable, however, because the term refers to criminal matters:

> The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. . .[p]robable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed.

*Brinegar v. United States*, 338 U.S. 160, 175-176 (1949). *See also*, *Ornales v. United States*, 517 U.S. 690, 695-96 (1996) ("We have described . . .probable cause to search as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found").

26

Defendants concede that they observed "no evidence of criminality (JA408, 559, 723)" (brief of defendants-appellants, page 8). Thus there could exist no "probable cause" to seize or search plaintiffs' property. Defendants may have had a reasonable belief that the envelopes in the folder contained suicide notes. Defendants may have reasonably presumed the contents of the envelopes could be relevant to their investigation. Defendants did not have probable cause to seize or search the envelopes.

*Hicks* is applicable to this matter, however. The Supreme Court took the case to define the parameters of when police may seize an item in plain view. The Court's ruling was quite specific:

> We granted certiorari in the present case to decide whether [the] "plain view" doctrine may be invoked when the police have less than probable cause to believe the item in question is evidence of a crime or contraband. . . . We hold now that probable cause is required.

*Arizona v. Hicks*, 480 U.S. 321, 326 (1987).

In this action defendants did not have any belief whatsoever that the folder they seized from Donna Veeder was "evidence of a crime or contraband." In fact, their stated reason for seizing the folder was that they assumed it contained suicide notes.[6]

---

[6] Suicide is not a crime. Thus, suicide notes would not presumptively be evidence of a crime.

27

Lacking probable cause to seize the folder, defendants certainly did not have probable cause to search it.  This search was an additional violation of plaintiffs' constitutional rights:

> [T]aking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy

*Arizona v. Hicks*, 480 U.S. at 325.

The final case relied upon by defendants, *Winfield v. Trottier*, provides no relief.  As this Court made clear, the issue there was whether a police officer's reading personal mail found therein exceeded the scope of consent granted to search a car.  Noting that the officer's actions did violate the owner's rights, the Court nevertheless granted qualified immunity because the right had not been clearly established.  *Winfield v. Trottier*, 710 F.3d 49 (2d Cir. 2013).   The crucial aspect of *Winfield* was the automobile owner's consent.  The Court found that Trottier exceeded the scope of consent granted to him by Winfield; however, as no Second Circuit case had previously established that his actions were illegal, he was entitled to qualified immunity.  *Id.*

There was no consent in this matter:  there was repeated and strenuous objection.  It was clearly established, well before the events which bring us before the Court, that it was a violation of the Fourth Amendment to conduct the search of the sealed envelopes contained within Donna Veeder's folder.

28

# POINT III

## THIS COURT SHOULD EXERCISE ITS PENDENT JURISDICTION OVER RELATED QUESTIONS

### A.     The seizure of the folder

The relevant facts necessary for the determination, as a matter of law, of the relative rights of the parties on this issue are not dispute.  All agree that defendants Burns and Nutting, upon consultation with Port and Hogan took the folder from Donna Veeder against her will.[7]  All agree that there was nothing about the folder suggesting it was contraband, evidence of a crime, or otherwise incriminating.  No warrant was issued for its seizure, and defendants have offered no exigent circumstances that would otherwise justify the taking.

Based upon these, essentially stipulated, facts, both parties moved for summary judgment.  Plaintiffs asserted these facts demonstrated, as a matter of law, that their constitutional right to be free from unreasonable seizures had been violated by defendants.  Thus, they were entitled to summary judgment on the issue of liability.  Defendants utilized the same set of facts in support of their

---

[7] Port, the supervising officer on the scene, recalls consulting with Nutting (JA190, 715-716), while Hogan states he does not recall (JA194).  Hogan was identified by Nutting, however, as the New York State Police Counsel with whom he consulted (JA817) and Hogan does not specifically deny this assertion (JA194).

motion for summary judgment by virtue of qualified immunity. [8]  The District Court denied both motions and subsequent requests for reconsideration, and, as is their right, defendants appealed.

Defendants' claim of qualified immunity with regard to the seizure of the folder boils down to this:  because the folder was in sight when defendant Nutting and/or Burns were lawfully in a place to view it, and although the folder did not appear incriminating on its face, as it was reasonable to assume the folder contained suicide notes that might be relevant to their investigation, the plain view doctrine allowed its seizure over Donna Veeder's objection (see brief of defendants-appellants generally, pages 26 through 44).  Thus, contend defendants, as a matter of law it was objectively reasonable for them to seize the folder, and they are entitled to qualified immunity.

Plaintiffs' claim for entitlement to summary judgment on the issue of liability was premised on the same facts: Nutting and Burns observed a folder which reasonably could have been presumed to contain Garry Veeder's suicide notes, but did not appear incriminating on its face, and Donna Veeder objected to its being taken.  Thus, contended plaintiffs, the seizure of the folder without a

---

[8] Although defendants suggest that they are adopting plaintiffs' version of events for the purposes of this appeal, the record and their brief make clear that the parties' versions of events are identical in all material aspects.

warrant or exigent circumstances, as a matter of law, violated plaintiff's Fourth Amendment rights.

Citing *Earle v. Vail*, *supra*, the District Court accepted defendants' argument that the plain view doctrine permits seizure of sealed envelopes, despite the owner's objection, if it could be reasonably inferred that the contents of the envelopes may be relevant to a criminal or non-criminal investigation. The Court denied defendant's motion solely on the ground that a question of fact existed as to whether they were in a position to lawfully view the folder (SA60-61).

Similarly, the District Court denied plaintiffs' motion for summary judgment with regard to liability, because the folder containing the envelopes was in plain view. The Court noted that "[a]lthough it is true that the letters in this matter had not yet been removed from their envelopes …the officers reasonably believed that they were suicide notes." As consent is irrelevant with respect to the propriety of a plain view seizure, the Court went on to rule:

> [E]ven if Plaintiff Donna Veeder did object to Defendants' seizure of the folder containing the letters… the letters were in the officer's plain view… and they were relevant to their investigation of Mr. Veeder's death. As such, the fact that plaintiff Donna Veeder did not consent to the seizure of the letters is not dispositive of this issue.

(SA67).

The issue of defendants' entitlement to qualified immunity is inextricably intertwined with the issue of plaintiffs' entitlement to judgment on the question of liability. The pertinent facts are not in dispute, the only question is the application of the law. If this Court rules that it had been clearly established that the plain view doctrine does not permit the seizure of items which are not incriminating on their face, then not only were appellants properly denied qualified immunity, but plaintiffs were entitled to a finding that they were liable for a violation of their Fourth Amendment rights.

Certainly plaintiffs could not have directly appealed the District Court's denial of their motion for summary judgment. However, as the facts upon which the District Court based its decision are squarely before this Court in the context of defendants' appeal from the denial of qualified immunity, this Court has the authority to exercise pendent jurisdiction to review the District Court's application of the law to those facts.

> [B]ecause the probable cause inquiry is inextricably intertwined with the immunity question, we will exercise our "discretion[] [to] consider otherwise nonappealable issues" based on our review of the question of qualified immunity.

*Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013). *See also, Golino v. City of New Haven*, 950 F.2d 864, 868-69 (2d Cir.1991) *cert. denied* 505 U.S. 1221 (1992) ("where we have jurisdiction to consider some questions on appeal, we

may exercise our discretion to take pendent jurisdiction over related questions"); *San Filippo v. U.S. Trust Co. of N.Y., Inc.*, 737 F.2d 246, 255-6 (2d Cir. 1984) ("under the doctrine of pendent appellate jurisdiction, once we have taken jurisdiction over one issue in a case, we may, in our discretion, consider otherwise nonappealable issues in the case as well [provided there is sufficient overlap of the relevant factors]"); *Sanders v. Levy,* 558 F.2d 636, 643 (2d Cir.1976), *aff'd en banc,* 558 F.2d 646, 647-48 (1977), *rev'd on other grounds sub nom. Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978) (Court may exercise pendent jurisdiction where "[t]here is sufficient overlap in the factors relevant to both issues to warrant [ ] exercising plenary authority").

This case is precisely the type that warrants the exercise of pendent appellate jurisdiction.  There is a complete overlap of the relevant factors—whether a police officer who sees an item in plain view that does not appear to be tied to criminal activities may seize that item on the reasonable belief that it might be relevant to a non-criminal investigation.  Defendants argue that, even were the seizure constitutionally impermissible, the law to that effect was not clearly settled.

Plaintiffs assert precisely the opposite:  the holdings in *Minnesota v. Dickerson*, *Soldal v. Cook County, Horton v. California, Arizona v. Hicks, Illinois v. Andreas, Washington v. Chrisman, Mincey v. Arizona,* and *Coolidge v. New*

33

*Hampshire* made absolutely clear that absent exigent circumstances, the warrantless seizure of an item in plain view could be justified only when the item's "incriminating character" was "immediately apparent."

It is submitted that the District Court's ruling that the plain view exception to the warrant requirement was applicable in this case—and thus plaintiffs were not entitled to summary judgment on the question of liability—was plain error, and this Court should exercise pendent jurisdiction to rectify that error by directing judgment in favor of plaintiffs on the issue of liability against defendants Nutting, Burns, Port, and Hogan.

### B.    The opening of the letters

Again, the facts are not in dispute.  Four days after the seizure of the letters, defendants Hogan and Port conducted a telephone conference to discuss what should be done with them.  Hogan directed Port to open the envelopes, "peruse" the letters, and photocopy them.[9]

Both parties moved for summary judgment on this same set of facts:  Port, acting in concert with Hogan, opened and photocopied the contents of sealed envelopes that had no indicia of criminality, with full knowledge that their owner

---

[9] Once again, Hogan does not recall the specifics of his conversation with Port, but he does have a "vague recollection" of the call (JA194).  The record, however, reveals that Port opened and had copied the letters at Hogan's direction (JA184, 667-68).

objected.  Defendants asserted the plain view doctrine permitted the search, as

well as the seizure, of material believed to be potentially relevant to their non-

criminal investigation.  In the alternative, defendants claim, the law was not

clearly established that the search was illegal.

Plaintiffs moved for summary judgment on the issue of liability, arguing

that regardless of the legality of the folder's seizure, *United States v. Jacobsen*,

*Arizona v. Hicks*, and their progeny, clearly established that, at the very minimum,

probable cause to associate the letters with a crime was required in the absence of

consent, a warrant, or exigent circumstances to search them.

The District Court denied defendant's motion on the ground that "questions

of fact present preclude the Court from finding as a matter of law that a reasonable

officer would have believed that his actions were lawful."  Among the "questions

of fact" noted by the Court was "whether Defendant Hogan actually spoke with

Defendants during the search" and "whether Defendants Hogan and Port knew the

extent and time of plaintiff Donna Veeder's alleged withdrawal of her written

consent" (SA64-65).[10]

The District Court denied plaintiff's motion with regard to the *search* of the

letters on the ground that "a jury could find that Defendants were justified in

---

[10] The next sentence in the District Court's opinion, however, begins, "Finally, regardless of the stated reason that Plaintiff Donna Veeder or her attorney did not consent to the seizure of the letters and their subsequent search…"

*seizing* the folder containing the letters, as it was readily apparent that they were relevant… Plaintiff Donna Veeder's lack of consent to their *seizure* is not dispositive of this issue" (SA68, emphasis added).  The Court did not differentiate between the seizure of the folder containing the letters and the subsequent search of the letters themselves; it determined that the plain view doctrine permitted the seizure of the folder, and extended that justification to rule that the plain view doctrine justified the search, as well.

Just as with the seizure of the folder, defendants' claim of entitlement qualified immunity is inextricably intertwined with plaintiffs' claim of entitlement to judgment on the question of liability.  Again, the pertinent facts are not in dispute, the only question is the application of the law.  If this Court rules that it had been clearly established that the plain view doctrine does not permit the search of sealed packages under the circumstances then present, Port and Hogan were not entitled to qualified immunity, and plaintiffs were entitled to judgment as a matter of law.

It is respectfully submitted that the District Court's determination that it is up to a jury to determine whether Hogan and Port "were justified in seizing [and presumably, searching] the folder containing the letters" was plain error.  While defendants argue that the facts mandate a finding that Port's and Hogan's opening and photocopying the contents of the envelopes was objectively reasonable, as a

36

matter of law, plaintiffs assert those behaviors were illegal, as a matter of law.

The effect of the District Court's ruling that that the plain view doctrine permitted the seizure and search of the folder and envelopes is to compel plaintiffs to establish liability on the part of Nutting, Burns, Port, and Hogan by convincing a jury that their actions were "unreasonable." This is not a question for the jury, however, as the law was clearly established that the seizure and search were *per se* unreasonable. Because we are already before this Court on this very issue, it is respectfully asserted that this Court should exercise its plenary jurisdiction and enter judgment on the issue of liability in favor of plaintiffs-appellees against defendants-appellees Nutting, Burns, Port, and Hogan.

## C.    The seizure of the briefcase

Plaintiffs acknowledge that Kelly Strack and Drew McDonald are not parties to this appeal, having been granted qualified immunity by the District Court (SA30-33, 68-69). Nevertheless, it is respectfully submitted that it is appropriate for this Court to address their seizure of Donna Veeder's briefcase. Again, the pertinent facts are not in dispute. As set forth by defendants-appellants:

> Strack and McDonald secured a number of items from the garage…They also secured a briefcase as evidence because its contents seemed to establish that Garry Veeder was having problems at work, which would

37

corroborate the finding of a suicide (JA161, 655, 661-663, 723). They did not find any evidence or otherwise observe anything to readily suggest that Garry Veeder had been the victim of a crime (JA645-646, 653)

(brief of defendants-appellants, page 13).

In denying plaintiffs' motion for summary judgment on the issue of liability, and granting Strack and McDonald qualified immunity, the District Court ruled "an objectively reasonable officer in the position of Defendants Strack and McDonald would believe that they could seize evidence that they believed to be relevant to their investigation …the fact that neither Defendant believed that the briefcase or its contents 'suggested criminal activity' does not mean that Defendants did not reasonably believe that the items were relevant" (SA69).

The District Court's ruling was plain error. As set forth above, it has long been established that a warrant, consent, or exigent circumstances is necessary for the seizure of property that is not apparently connected with criminal activity. Just as demonstrated with the analysis of the District Court's application of the plain view doctrine, the mere fact that the item seized may be potentially relevant to a non-criminal investigation is simply insufficient to justify this invasion of plaintiff's privacy.

As it was defendants-appellants who brought these facts before this Court (brief of defendants-appellants, page 13), and these facts are not in dispute, it is respectfully submitted that this Court may exercise its plenary power to correct

38

this error of law by reversing the grant of qualified immunity to defendants Strack and McDonald and granting plaintiffs summary judgment on the issue of liability against them.

# CONCLUSION

The District Court's determination that defendants-appellants Nutting, Burns, Port, and Hogan were not entitled to qualified immunity was correct. The rationale behind the decision, however, was incorrect. Whether Burns and Nutting were lawfully in a place to view the folder with the envelopes is irrelevant to the determination. Both knew that Donna Veeder objected to their taking it: thus a warrant or exigent circumstances was necessary to seize it. The plain view doctrine was inapplicable because the folder did not have any apparent connection to criminal activity. The fact that the contents of the folder may have reasonably been presumed to be relevant to their investigation is of no moment.

For the same reasons, the seizure of Donna Veeder's briefcase by defendants Strack and McDonald was a clear violation of the Fourth Amendment.

Both Port and Hogan were aware that Donna Veeder had objected to the seizure of the folder containing the envelopes. As there had been no warrant issued for its search, the opening of the envelopes and photocopying the contents was illegal.

As the undisputed facts are before this Court at the instigation of defendants-appellants, and because these facts are inextricably intertwined with plaintiffs' motion for summary judgment on the issue of liability before the District Court, the interests of justice and judicial economy warrant this Court exercising its pendent jurisdiction and plenary power to grant summary judgment on the issue of liability in favor of plaintiffs against defendants-appellants Nutting, Burns, and Port for the seizure of the folder and against defendants-appellants Port and Hogan for the search of the envelopes, as well as against defendants Strack and McDonald for the seizure of the briefcase.

Dated:      Albany, New York
              August 5, 2014

                                    Respectfully submitted,

                                    KEITH F. SCHOCKMEL

                                    Attorney for Plaintiffs-Appellees
                                    4 Atrium Drive, Suite 290
                                    Albany, New York  12205
                                    (518) 435-9360

# 13-1739-cv

## United States Court of Appeals for the Second Circuit

---

DONNA VEEDER, STACY VEEDER, BRENDAN VEEDER,

*Plaintiffs-Appellees*,

v.

STEVEN NUTTING, INDIVIDUALLY, DAVID BURNS, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES AS INVESTIGATORS FOR THE NEW YORK STATE POLICE, STEPHEN HOGAN, INDIVIDUALLY, GEORGE PORT, INDIVIDUALLY,

*Defendants-Appellants*,

ROBERT J. MARTIN, INDIVIDUALLY, KELLY STRACK, AND IN THEIR OFFICIAL CAPACITIES AS INVESTIGATORS FOR THE NEW YORK STATE POLICE, DREW McDONALD, AND IN THEIR OFFICIAL CAPACITIES AS INVESTIGATORS FOR THE NEW YORK STATE POLICE, BRENT GILLIAM, AND IN THEIR CAPACITY AS LIEUTENANTS FOR THE NEW YORK STATE POLICE, BRIAN VALOZE, INDIVIDUALLY AND IN THEIR CAPACITY AS EMPLOYEES OF THE NEW YORK STATE POLICE, TIMOTHY HARD, INDIVIDUALLY AND IN THEIR CAPACITY AS EMPLOYEES OF THE NEW YORK STATE POLICE, MICHAEL McDERMOTT, INDIVIDUALLY AND IN THEIR CAPACITY AS AN ASSISTANT DISTRICT ATTORNEY FOR THE COUNTY OF ALBANY, NEW YORK, JOHN DOE, 1-7, THE NAME BEING FICTITIOUS BUT INTENDED TO REPRESENT AN EMPLOYEE OF THE NEW YORK STATE POLICE, INDIVIDUALLY AND IN HIS/HER CAPACITY AS AN EMPLOYEE OF THE NEW YORK STATE POLICE,

*Defendants*.

---

**On Appeal from the United States District Court
for the Northern District of New York**

**BRIEF FOR PLAINTIFFS-APPELLEES**

---

The undersigned attorney, Keith F. Schockmel, hereby certifies that this brief complies with the type-volume limitations of FRAP 32(a)(7). According to the word processing system used by this office, this brief, exclusive of the title page, table of contents, table of citations, statement with respect to oral argument, any addendum containing statutes, rules or regulations, and any certificates of counsel, contains 8894 words.

/S/
KEITH F. SCHOCKMEL
Attorney for Plaintiffs-Appellees
4 Atrium Drive, Suite 290
Albany, New York 12205
(518) 435-9360